UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DONALD SWEENEY,

Plaintiff,

v.                    4:10-cv-111

AMERICAN HOME MORTGAGE SERVICING, INC., et al.,

Defendants.

## ORDER

This case is before the Court on Motion for Summary Judgment filed by Defendants American Home Mortgage Servicing, Inc. ("AHMSI") and U.S. Bank National Association, as Trustee for TBW Mortgage-Backed Pass-Through Certificates, Series 2007-2 (the "Trustee") (collectively "Defendants"). *See* Doc. 24.

### I. BACKGROUND FACTS

In his Complaint, Plaintiff Donald Sweeney ("Sweeney") seeks injunctive and declaratory relief to avoid foreclosure. *See* Doc. 1, Ex. A. On January 4, 2007, Sweeney entered into a home loan with First National Bank that had a principal amount of $717,000 secured by the property located at 6 Hasleiters Retreat, Savannah, Georgia 31411 (the "Loan"). *See id.* at 2-3; Doc. 24-6. On the same date, Sweeney executed a deed to secure the Loan ("Security Deed"). *See* Doc. 24-4.

Defendants allege that Sweeney failed to make Loan payments in August, September, October or November 2009, and that he has made no payments since December 2009. *See* Doc. 24-1 at 4. Defendants further allege that, although Sweeney may disagree with a portion of the balance due on the Loan, he has never tendered or offered to tender the undisputed amount due on the Loan. *See id.*

Sweeney claims that his payments for the months of August, September, October and November 2009, were not credited to his account, *see* Doc. 29-8 at 1. He offers evidence of only one such payment, in the amount of $4,033.13, dated August 11, 2009. *See* Doc. 29-5. Sweeney admits that he has made no payments since December 2009. *See* Doc. 25, ¶ 13; Doc. 30, ¶ 13. Sweeney denies, however, that his failure to pay amounts to default. *See* Doc. 30, ¶ 14.

On March 1, 2010, the Trustee sent Sweeney a letter entitled "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. 1692 INITIAL COMMUNICATION LETTER." *See* Doc. 29-6 ("Fair Debt Letter"). The Fair Debt Letter gives Sweeney thirty days to dispute the debt. *See id.* at 1. The letter appears to state that, despite the thirty-day dispute period, the Trustee's representative "may commence the foreclosure action without waiting thirty (30) days, if so requested by our client." *Id.*

The letter also informs Sweeney that, as of March 1, 2010, he owes $749,590.20 on the Loan, and includes contact information for the Trustee's loss mitigation department, in the event Sweeney was interested in curing the default. *See id.*

On the same date, in a separate letter, the Trustee notified Sweeney that because he had defaulted on the Loan, the property

securing the Loan would be held for public sale on April 6, 2010. *See* Doc. 29-7 at 2 ("Foreclosure Sale Letter"). In the Foreclosure Sale Letter, the Trustee references the Fair Debt Letter, and states: "That letter also advised you of certain rights ("Borrower's Rights" which include your right to validate the debt) you could exercise within 30 days of your receipt of the [Fair Debt Letter]. Nothing in this letter will prevent you from exercising the Borrowers' Rights as explained in the [Fair Debt Letter]." *See id.* at 1.

The Foreclosure Sale Letter further advised Sweeney that it served as "a formal demand for immediate payment of the total indebtedness," and that "your loan *has been accelerated* and foreclosure proceedings will continue." *Id.* at 2 (emphasis added). The letter explains that "[a]ny partial payment received [by the Trustee] on the subject debt after the date of this letter will be applied to the reduction of the aforesaid debt and will not result in reinstatement or a deceleration of the loan." *See id.*

Based on the facts in the record, Defendants ask the Court to grant their Motion for Summary Judgment, and find that Sweeney is not entitled to enjoin foreclosure. *See* Doc. 24-1.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is generally appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [his] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### A. Sweeney's Default

Neither party disputes the existence or the validity of the Loan or the Security Deed. Sweeney claims that he is not in default because Defendants failed to comply with the terms of the acceleration clause in the Security Deed. *See* Doc. 29-1 at 4.

The Security Deed provides:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, *not less than 30 days from the date the notice is given to the Borrower*, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and other remedies permitted by Applicable Law, Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

*See* Doc. 24-7 at 12 (emphasis added).

In the Motion for Summary Judgment, Defendants argue that "[p]aragraph 22 of the Security Deed provides that, if Mr. Sweeney falls into default by failing to make the monthly installment payments required by the Note, the Lender may require immediate payment of the Loan in full, and may sell the Property by non-judicial foreclosure." Doc. 24-1 at 3. This is plainly *not* a fair reading of paragraph 22.

The Security Deed requires that the borrower be given at least thirty-days' notice and an opportunity to cure *prior to* acceleration. As the Court explains below, Defendants have not presented evidence that they abided by these terms.

Sweeney's position that he is not in default because the acceleration notice was improper, however, is no more tenable. Whether acceleration is proper does not determine default status. The Loan agreement states:

> **6. BORROWER'S FAILURE TO PAY AS REQUIRED**
>
> . . .
>
> **(B) Default**
>
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

*See* Doc. 24-6 at 3.

An unambiguous contract must be read and enforced according to the plain meaning of its terms. *See Begner v. United States*, 428 F.3d 998, 1005 (11th Cir. 2005) (stating that if the contract "language is clear and unambiguous," the court "simply enforces

3

the contract according to its clear terms; the contract alone is looked to for its meaning").

This legal precept applies equally to the interpretation of loan agreements and security deeds. *See Rapps v. Cooke*, 246 Ga. App. 251, 253 (2000) ("Under Georgia law, it is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.") (citing *Gordon v. S. Cent. Farm Credit, ACA*, 213 Ga. App. 816, 817 (1994)); *REL Dev., Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 433 (2010) (looking to the terms of the contracts between the parties to determine operation of acceleration and foreclosure provisions).

Here, the Loan agreement requires nothing more than a failure to pay to trigger default status. Even under Sweeney's version of the facts, he has failed to make any loan payments since December 2009. *See* Doc. 30, ¶ 13 (Sweeney's admission, in his response to Defendants' statement of undisputed material facts dated November 29, 2010, that he had not made any Loan payments since December 2009). No genuine issue of material fact exists on this issue. Sweeney is in default due to his failure to make required monthly payments.

### B. Defendants' Acceleration and Foreclosure

Whether Defendants have abided by the terms of the contracts in acting on Sweeney's default is a separate question.

Both the Loan agreement and the Security Deed require Defendants to give thirty-days' notice of acceleration. *See* Doc. 24-6 at 3 (Loan agreement states that, following default, acceleration date "must be at least 30 days after the date on which the notice is mailed to me"); Doc 24-7 at 12 (Security Deed states that notice of default must include certain information, including "a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured" and notice that the "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured . . . and sale of the Property").

The parties could have agreed to acceleration without notice, but did not. The Defendants are, therefore, bound by contract terms. *See Duncan v. Lagunas*, 253 Ga. 61, 63 (1984) ("where the parties agree that in the event of default the creditor 'may declare' acceleration, the exercise of the option to declare acceleration must be communicated to the debtor . . ., but where the parties agree that in the event of default the creditor 'may declare' acceleration 'without notice' to the debtor, . . . according to the agreement, notice of the declaration of acceleration need not be communicated to the debtor.") (citing *Fulton Nat'l Bank v. Horn*, 239 Ga. 648, 650 (1977)).

Defendants have failed to provide Sweeney with sufficient notice. The Foreclosure Sale Letter, which is the first evidence in the record that Defendants provided notice of default, states that "your loan *has been accelerated* and foreclosure proceedings will continue." *See* Doc. 29-7 at 2 (emphasis added). Sweeney was not given an opportunity to cure the default before receiving this letter.

Under the terms of the Security Deed, the Defendants' failure to properly notify Sweeney of acceleration also prevents immediate foreclosure. The Security Deed ties acceleration and foreclosure together, stating that, following notice of default, "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower . . ." *See* Doc. 24-7 at 12.

Because Defendants failed to comply with the notice requirement for acceleration, and because the terms of the contract tie acceleration to foreclosure, Defendants do not presently have the right to foreclose on Sweeney's Loan.

The Court notes, however, that the Loan agreement also includes the following provision:

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Doc. 24-6 at 3. In other words, Defendants failure to comply with notice requirements in March 2010 does not prevent them from providing proper notice of default at a later date.

### C. Availability of Injunctive Relief

Despite Defendants failure to provide proper notice of acceleration, injunctive relief is unavailable to Sweeney. Under Georgia law, "[a] borrower who has executed a deed to secure debt is not entitled to enjoin a foreclosure sale unless he first pays or tenders to the lender the amount admittedly due." *Nicholson v. OneWest Bank*, 2010 WL 2732325, at *5 (N.D. Ga. Apr. 20, 2010) (citing *Mickel v. Pickett*, 241 Ga. 528, 535 (1978)); *see also Wright v. Intercounty Props., Ltd.*, 238 Ga. 492, 493 (1977).

This rule is not absolute. *See, e.g., Mitchell v. Interbay Funding, LLC*, 279 Ga. App. 323, 325 (2006) ("It is true that a tender is unnecessary where the person to whom the money is due states that the tender would be refused if made.") (internal citation omitted); *Wright*, 238 Ga. at 493 (noting that exceptions exist to the tender rule).

Here, Sweeney admits that he has made no payments since December 2009, but argues that his non-payment is justified, or at least excusable, because Defendants have dealt with him in bad faith by refusing to tell him how much he owes on the Loan. *See* Doc. 29-1 at 2-4 ("Plaintiff Sweeney has continued to ask for an accounting as to what amount is properly due . . . To date there has been no such providing of the information needed.").

Even assuming that bad faith is an exception to the tender rule, Sweeney's argument fails. In support of his position, Sweeney cites *West v. Koufman*, 259 Ga. 505 (1985). In *West*, the Court enjoined John Q. West ("West") from foreclosing on Douglas Koufman's ("Koufman") property. *See id.* at 505. Koufman alleged that West solicited friends to take out false liens

5

against the property. *See id.* Koufman paid two liens as soon as he received notice of filing, but contested the validity of two others. *See id.* The court held that the solicitation of false liens, if proved, would constitute a breach of the duty of good faith and fair dealing implied in all contracts, and affirmed the interlocutory injunction against foreclosure. *See id.* Sweeney has made no allegations, much less offered any evidence, of such under-handed dealings in this case.

Because Sweeney has failed to tender the undisputed amount due on the Loan, injunctive relief is unavailable to him.

### III. CONCLUSION

Defendants' Motion for Summary Judgment, *see* Doc. 24, is **GRANTED** with respect to Plaintiff's claim for injunctive relief, but **DENIED** with respect to Plaintiff's declaratory judgment claim.

This 22nd day of February 2011.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA